JUDGE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR23-5097-DGE |
| Plaintiff, | ) | |
| v. | ) | MR. GREENWOOD'S SENTENCING MEMORANDUM |
| MATTHEW GREENWOOD, | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Mr. Greenwood is sorrier than he can ever express in words for his actions on December 25, 2022. He is horrified by the damage, fear, and sadness that he caused to so many people in our community. He prays that nobody was seriously injured because of what he did. He plans to spend the next decades working hard to pay restitution and to try to make amends to those he harmed. Mr. Greenwood has felt this way, and expressed his remorse, since the day he was arrested. And over the past year, he has demonstrated his commitment to turning his life around and ensuring that he is never again in a place to make such a reckless and harmful decision.

Mr. Greenwood committed this offense at the worst crisis point in a life full of crises. As detailed below, and in other sentencing filings, Mr. Greenwood grew up with violence, abuse, and drugs, rather than love, safety, and support. As a result, he began struggling with homelessness and Substance Use Disorder (SUD) in his young teens. In December 2022, Mr. Greenwood and his long-time partner were facing imminent

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

eviction, while she was eight months pregnant, sending Mr. Greenwood into a panic. Mr. Greenwood's mental capacity was further overloaded when his older brother, who was already experiencing homelessness, died after being found trying to live outside on the street. Mr. Greenwood blamed himself for his brother's death, and feared the same fate would befall his nascent family if he could not prevent the eviction.

Desperate and heavily using methamphetamine to try to cope through this mental crisis, Mr. Greenwood made the worst decision of his life. He and his only real friend at the time hatched a plan to burglarize ATMs after knocking out power around them to avoid detection. His decision was the result of desperation and shortsightedness, not an intent to terrorize. The plan failed. And caused immense harm in the process—harm Mr. Greenwood likely will never stop atoning for.

Since he was released on bond in this case almost a year ago, Mr. Greenwood has completely turned his life around. He completed inpatient treatment, followed by intensive outpatient, and regular outpatient SUD treatment. He has successfully maintained sobriety throughout this time, verified by frequent UAs. He found a good job in an entirely new field of work, where he has now been able to join a union to receive good benefits for his family. He has established a safe and stable home with his partner, who is also sober. He has strengthened his religious practice and developed a strong support network through his church. And, most significantly, he has become a father. Unlike his own parents, Mr. Greenwood is an engaged, loving, and supportive father to his daughter.

Mr. Greenwood, through counsel, joins both Probation and the government in recommending a sentence of three years of probation, on the conditions recommended by the Probation department, to include six months of home detention, in addition to substantial restitution. This is a rare instance where three separate parties came to the same recommended sentence without a prior agreement to do so. This is likely because

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

the recommended sentence is the best way to advance the goals of sentencing in this very unique case.

## II. MR. GREENWOOD ENDURED AN EXTREMELY ABUSIVE CHILDHOOD THAT LEFT HIM WITH UNRESOLVED TRAUMA, A SERIOUS ADDICTION, AND NO SAFETY NET.

When considering Mr. Greenwood's personal history under 18 U.S.C. § 3553(a)(1), his uncommonly difficult childhood stands out. Mr. Greenwood never experienced the safety, love, or support that every child deserves. Instead, he knew violence, insults, threats, malnourishment, drugs, and, most of all, fear. Mr. Greenwood himself insists he and he alone is responsible for his actions here. He will not blame his parents for his choices. However, counsel and others who are aware of his childhood recognize the immense negative impact it wrought on Mr. Greenwood's mental health. Indeed, as the government recognized:

> Greenwood's upbringing was extremely difficult and full of challenges that no one should be forced to endure. As reflected by his nearly top-end A[dverse] C[hildhood] E[xperiences] score, he suffered verbal abuse, physical abuse, and emotional neglect at the hands of the very people who should have nurtured him. His upbringing directly contributed to his ultimate abuse of methamphetamine which, in turn, led to his criminal activities.

Dkt. 69 at 3. This is no exaggeration.

Mr. Greenwood and his three older siblings endured multiple forms of abuse and neglect from their parents. Mr. Greenwood remembers a brief time when he saw his father as a loving and hardworking man who supported his family financially, but otherwise he has scant good memories of his parents. Mr. Greenwood's father had a serious SUD himself and became increasingly paranoid and unstable after using drugs. Moreover, he was repeatedly imprisoned for serious crimes, including acts of violence against his family.

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

As a result, Mr. Greenwood's grade school years were spent primarily with his mother. Mr. Greenwood's mother may have had some underlying mental health conditions, but certainly had a very serious alcohol use disorder. She drank heavily throughout Mr. Greenwood's childhood, and also used cocaine. And she abused Mr. Greenwood and his siblings. Her physical abuse was severe, including beating them and hitting them with household objects. Other family members tried unsuccessfully to have the children removed from her custody. While Mr. Greenwood's two older brothers (who were not his mother's biological children) were eventually allowed to stay with their grandparents, Mr. Greenwood and his sister were kept with their mother.

Mr. Greenwood's uncle recalls seeing bruising all over Mr. Greenwood and his siblings on the occasions they would come to stay with him and his family, and noticing how ravenously they ate at his home, raising concern that they weren't fed enough at home. Indeed, Mr. Greenwood's mother was usually too intoxicated to take care of their basic needs. She never showed love or affection for Mr. Greenwood and his siblings. Instead, Mr. Greenwood's sister, who was just four years older than he was, had to take on a parenting role for him until she ran away from home at age 12.

When Mr. Greenwood was barely reaching his teens, his mother decided she no longer wanted to parent him. She had her new partner drop him off at a diner where his father was waiting for him, having recently released from prison. This new arrangement led to a more loving but equally frightening home. Mr. Greenwood's father indeed showed Mr. Greenwood affection, but did not treat him as his child. Instead, his father treated him as a peer. Mr. Greenwood's father was addicted to methamphetamine and regularly used the drug *with* Mr. Greenwood when he was as young as 13 years old. Unsurprisingly, Mr. Greenwood too became addicted to the drug.

But, due to his own drug use and mental health issues, Mr. Greenwood's father also, at times, treated Mr. Greenwood as an enemy. Over time, Mr. Greenwood's father

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

grew increasingly paranoid and violent—he came to believe those around him were out to get him or conspiring against him, including his young son. He threatened Mr. Greenwood and behaved erratically. This culminated when Mr. Greenwood was about 16 years old, when his father, in a state of delusional paranoia, chased him and shot at him with a bow and arrow.

Mr. Greenwood left his father's home. He was homeless and tried to find shelter with friends or slept on the street. His own SUD worsened, and his methamphetamine use led him to the company of others who used the drug. Mr. Greenwood soon was kicked out of school and as such, lost his only tie to a pro-social support system. Before he was 18 years old, Mr. Greenwood had over a decade of untreated trauma, a severe SUD, and no positive safety net.

As detailed in other sentencing filings, these adverse childhood experiences can have lifelong impacts. *See* Centers for Disease Control & Prevention, Fast Facts: Preventing Adverse Childhood Experiences (April 6, 2022), https://www.cdc.gov/violenceprevention/aces/fastfact.html. "A[dverse] C[hildhood] E[xperience]s can have lasting, negative effects on health, well-being, as well as life opportunities such as education and job potential. . . . Toxic stress from A[dverse] C[hildhood] E[xperience]s can negatively affect children's brain development, immune systems, and stress-response systems. These changes can affect children's attention, decision-making, and learning." *Id*. Mr. Greenwood's ACEs "score" is 9 out of 10, and the extent of his experiences on many of these metrics was extreme.

Despite this, Mr. Greenwood managed to develop positive work skills and periods of stability in adulthood. He found grueling but rewarding work in the construction industry and worked hard to build the stable life he never knew growing up. For a time, he was able to pay rent at his own apartment. But he never received mental health treatment. He never received trauma counseling. And he never treated nor

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

managed to control his SUD. When his drug use increased, he struggled to hold down steady work and resorted to the types of thefts making up his criminal history to survive. Mr. Greenwood remains ashamed of his prior conduct and sorry for the ways he harmed people, even with less serious crimes.

This was Mr. Greenwood's life in the years preceding this offense. He had a positive relationship, but both he and his partner were dealing with addiction. Mr. Greenwood's SUD was more aggravated than his partner's, and he was barely able to support himself financially, let alone to help his partner. They lived in a trailer that his father had previously used, acquiring it after his father again went to prison.

At the time, others in Mr. Greenwood's family were either struggling themselves, or unwilling to take a chance on him due to his drug use. And Mr. Greenwood was resistant to asking for help from those in his family who were doing well—he did not want to drag them into his problems. He worried constantly about his sister and his brother Kyle, who were dealing with their own struggles and turmoil, possibly also stemming from their childhood. And he continued to feel compelled to help his father who was serving a prison sentence and frequently in need of money to afford basic necessities in prison.

### III. MR. GREENWOOD'S ABILITY TO MANAGE HIS MENTAL HEALTH AND SUD WERE OVERWHELMED BY BACK TO BACK CRISES LEADING UP TO THE OFFENSE.

The circumstances of the offense, which are considered under 18 U.S.C. § 3553(a)(1), demonstrate that Mr. Greenwood made this terrible decision at one of the worst times in his life, when his capacity to think clearly was at its lowest. His actions here are not indicative of his true character or potential. Rather, they were a terrible, desperate, and failed attempt to protect his pregnant partner from the dangers of homelessness that had befallen his brother.

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 6

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

In 2022, Mr. Greenwood's partner learned she was pregnant. This would be Mr. Greenwood's first child. As are many expectant parents, he was both consumed with joy and anxious about the coming responsibility. He supported his partner to get sober and tried to do the same. However, he did not participate in professional treatment—at the time, he did not know that he may be able to receive such treatment when he could not pay. Mr. Greenwood was not at that time able to achieve sobriety, but tried to reduce his meth use to the amount he needed to maintain his SUD—to avoid withdrawal and feel that he could function day-to-day. Though not sober, Mr. Greenwood had begun to achieve tenuous control over his SUD. He tried to earn more money to be able to provide for the baby and to support his partner to be able to take time off from work after she gave birth.

Mr. Greenwood did not want his child to know the fear he had as a child. He wanted her to grow up in a safe and stable home. Mr. Greenwood spoke with an acquaintance who was willing to sublet space on their leased property to Mr. Greenwood and his partner, so they could park their trailer in a safe place and not have to move it when they had the baby. Mr. Greenwood paid the acquaintance all he had saved up to secure the sublet for the next few months. Mr. Greenwood moved his trailer to the land. Shortly after, he lost his truck (which was his only way of moving the trailer). Unfortunately, Mr. Greenwood soon learned that the acquaintance took his money but did not pay rent. In fact, they had not paid rent for months. Mr. Greenwood learned from the owner of the land that he was owed thousands of dollars in back due rent.

Mr. Greenwood and his partner faced imminent eviction if they could not come up with the money. And they would not even be able to relocate their trailer, as Mr. Greenwood had lost his truck. Mr. Greenwood began to panic. He had no idea how to make that much money that quickly. He knew that any construction job would not

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

pay until the job was finished. And his prior relatively minor thefts generated only small amounts of money. Mr. Greenwood did not know how to avoid eviction.

During this time of panic, Mr. Greenwood encountered another crisis. His older brother Kyle reached out to him for help. His brother had suffered some of the worst abuse in childhood and had dealt with serious depression and SUD throughout his life. He also had a medical condition that he struggled to manage. He was using drugs—including opiates—and was unhoused. As the weather got very cold in December of 2022, he reached out to Mr. Greenwood. He asked if he could stay with Mr. Greenwood and his partner. Mr. Greenwood had agreed to this in the past, and his brother always ended up staying longer than anticipated. Mr. Greenwood was worried about this happening again with the baby on the way, the threat of eviction, and his brother's serious drug use. He needed time to think and did not give his brother a firm answer or allow him to come stay with him right away.

Days later, Mr. Greenwood's brother was found on the street and passed away shortly after he was brought to a hospital. Mr. Greenwood was devastated by his death. He blamed himself.[1] He thought if only he had just said yes to his brother, he could have saved him. And his fear of what would happen if he and his pregnant partner became homeless increased. Mr. Greenwood was overwhelmed. His panic escalated to desperation. And he turned to the only medicine he had ever known to suppress his fear and make it through the day—methamphetamine. Mr. Greenwood's methamphetamine use increased following his brother's death, further impairing his thinking.

Mr. Greenwood is horrified by his reckless and dangerous decision here. He is deeply ashamed and determined to make amends. He was overwhelmed by stress, grief, and panic when he committed this offense. Even worse, he was relying on

---

[1] Indeed, discovery revealed that close in time to this offense, Mr. Greenwood was searching the internet for "song for my brother who passed away and it was my fault."

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

methamphetamine to cope with these emotions. He was not thinking clearly or recognizing the impact of his actions. Furthermore, as indicated in other filings, Mr. Greenwood has cognitive weaknesses in abstract reasoning and experiences more impulsivity than most people, the latter likely related to previously untreated ADHD.

Mr. Greenwood takes full responsibility and is sincerely sorry for his bad decisions here. The circumstances of the offense reveal that Mr. Greenwood made these decisions at the worst crisis point in his life, when his mental faculties were overwhelmed and impaired. As detailed below, with appropriate supports and treatment for his mental health, he will not repeat such poor decisions.

### IV. MR. GREENWOOD HAS WORKED EXTREMELY HARD TO TRANSFORM HIS LIFE OVER THE PAST YEAR—HE HAS BECOME THE PARENT THAT HE ALWAYS WISHED HE HAD.

It does not take long after meeting Mr. Greenwood to recognize that he is a kind and generous man, who wants the best for other people. To assess Mr. Greenwood's characteristics under 18 U.S.C. § 3553(a)(1), the Court need look no further than to his achievements over the last year. Mr. Greenwood will forever be grateful to the Court for taking a chance on him, and allowing him to be released pretrial to treatment. In return, as the government, Probation, and Pretrial Services have all recognized, Mr. Greenwood has achieved everything the Court could hope for.

Just under a year ago, the Court ordered Mr. Greenwood's release. He went directly from jail to an inpatient SUD treatment program. He completed this program with positive feedback from his treatment providers and transitioned to a sober housing program and intensive outpatient treatment. Mr. Greenwood's treatment program was demanding, with multiple session every week. Nonetheless, he engaged fully with treatment while also finding work and parenting his newborn baby. Indeed, Mr. Greenwood found a job where he could work night shifts—learning a trade that was entirely new to him—so that he could be available for his SUD treatment and to

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

make his daughter's medical appointments and visits. Mr. Greenwood graduated from intensive outpatient to regular outpatient treatment and eventually graduated from his SUD treatment program entirely.

The life that Mr. Greenwood has built for his family demonstrates how seriously he took treatment and the lessons he learned there. Mr. Greenwood learned about supports in the community that he never knew existed. He applied with his partner for supportive family housing and they lived together in a small unit while Mr. Greenwood worked long hours to save up for long-term housing. Mr. Greenwood planned for housing carefully, making sure that his income would be sufficient for rent long-term, and ultimately moved into his own apartment with his partner and baby.
Mr. Greenwood has worked hard at his job and was ultimately able to join his work's union and receive better benefits for his family. He and his family are also members of a church in their area, where they attend services regularly and have made friends who are living positive lives, free of drugs.

Mr. Greenwood has no desire to use methamphetamine again. He now has far better ways to cope with stress and difficult emotions. He has strong supports in his partner, his church, and family that have reconnected with him following his sobriety. He also now has appropriate medication for his mental health and hopes to additionally participate in regular mental health counseling (which will be facilitated by improved health insurance effective next month). Mr. Greenwood maintains his sober supports as well, and hopes some day to serve as a support to other people working to overcome their addictions.

Mr. Greenwood's proudest role is as a father. As demonstrated by his own letter, he is determined to be a great parent, unlike his own. And he is achieving that goal in spades. Mr. Greenwood regularly attended parenting classes and support groups with his partner, even though he was the only father in attendance. He frequently sacrifices

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

sleep and rest to spend time with his daughter and to make sure all her needs are met. And he makes sure that his daughter receives the absolute best care and that she always feels safe. Those who have seen Mr. Greenwood with his daughter quickly recognize his immense love and support for her.

Mr. Greenwood has now been sober for a year. This is his first sustained period of sobriety since he was 13 years old. It is also the first time in his life that he has received any form of appropriate treatment for his mental health. And with this appropriate care, and sobriety, Mr. Greenwood's true character shines through. Now, every day, he is able to act in accordance with his character and to think about the impacts of his actions. He is unfailingly kind, generous, and hardworking.

## V.  THE GOALS AND OF SENTENCING ARE BEST ACHIEVED BY THE JOINTLY RECOMMENDED SENTENCE.

Mr. Greenwood joins Probation and the government in asking the Court to sentence him to three years of probation with the conditions recommended by Probation, to include six months of home detention, and restitution. This sentence will best advance the goals of sentencing in this case, which is unlike any other that undersigned counsel is aware of.

First, this sentence is sufficient "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). The offense is certainly serious. It had a large and harmful impact on many people. As Mr. Greenwood recognizes, he cannot undo the harm he caused:

> I don't know how I can make amends to the community. I can't replace Christmas. I can only hope and pray that those families and all those people are healthy and happy and I pray that God will bless them with good things that will give back what I have taken from them. All I can do is say that I'm sorry.

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 11

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Ex. A. He takes this offense very seriously and recognizes its harm. A custodial sentence is not necessary to impress upon Mr. Greenwood the seriousness of the offense. The six-month period of home detention will still be punitive—Mr. Greenwood will not be allowed to leave home for leisure, for family celebrations, or for the many non-essential events that make freedom so sweet. But, he will be able to continue working—something important for his family *and* for his ability to pay restitution—and he will be able to continue participating in treatment and parenting his daughter.

The best way to further provide "just punishment" here is to include a restitution order in the sentence. Restitution will, at a minimum, repay the costs that the utilities spent to fix the damage that Mr. Greenwood did. This is important to Mr. Greenwood as it is the best way to make amends in a concrete way. While the purpose of restitution is to make whole the power companies harmed by this offense, it will also have the effect of reducing Mr. Greenwood's income for decades to come. While Mr. Greenwood is rightfully proud of his work and his ability to pay bills with his income, his earnings are still relatively low and he is unlikely to be able to save significant money or build assets for his family while paying restitution. Mr. Greenwood accepts this and is grateful that he can pay back the community, in any way, for the harm he caused.

Second, the proposed sentence will more than adequately deter Mr. Greenwood from future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). As all parties to this case recognize, Mr. Greenwood has been thoroughly deterred. He has worked extremely hard to change his circumstances—to maintain sobriety and to ensure that he does not again find himself in the desperate position that led to his terrible decision here. The best way to maintain this deterrence is to allow Mr. Greenwood to continue on this positive path—to allow him to continue working, supporting his family, attending church, and participating in treatment.

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 12

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

A custodial sentence is more likely to impede the goal of deterrence than to advance it. The Department of Justice's National Institute of Justice has recognized research demonstrating that prisons do not deter future criminal conduct. "Prisons actually may have the opposite effect: Persons who are incarcerated learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment." Dep't of J., Nat'l Inst. Of J., *Five Things About Deterrence* (June 5, 2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence#addenda. Indeed, analysis of multiple studies over time reveals that "more intense correctional interventions . . . can ***increase the failure rates of low-risk offenders***." Christopher T. Lowenkamp & Edward J. Latessa, *Understanding the Risk Principle: How and Why Correctional Interventions Can Harm Low-Risk Offenders*, Topics in Community Corrections, at 6 (2004), https://www.researchgate.net/publication/228601026_Understanding_the_risk_principle_How_and_why_correctional_interventions_can_harm_low-risk_offenders (emphasis added).

Third, the recommended sentence is certainly sufficient to protect the community. *See* 18 U.S.C. § 3553(a)(2)(C). Mr. Greenwood's substantial rehabilitation over the past year demonstrates that he poses no danger to the community. Furthermore, the three-year term of supervised release, beginning with an intensive term of home detention, will allow Probation to remain in close contact with Mr. Greenwood and to intervene should he slip in any way from his positive path.

And even beyond supervision, it is clear that Mr. Greenwood is in a different place than he was when he committed this offense. That is not just figuratively true, but literally. Indeed, following the advice of treatment providers, he and his partner relocated to a city where they knew nobody, recognizing that everybody they had known in the Tacoma area were drug-involved. They became part of a new community,

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 13

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

one focused on faith and one where their friends and supports do not use drugs. Furthermore, Mr. Greenwood is establishing long-term and appropriate mental health supports to ensure that he has healthy ways to address future stressors, crises, or tragedies that may occur in his life. No custodial sanction is needed to protect the community.

Fourth, the recommended sentence will best advance the goal of rehabilitation. As both Probation and the government recognize, interrupting Mr. Greenwood's remarkable progress to date would be counterproductive. It would disconnect him from his supports in the community and likely would be a hit to his mental health.

Furthermore, the Bureau of Prisons (BOP) is not presently able to offer the kind of rehabilitative programming that Mr. Greenwood can receive in the community. The BOP is dealing with critical understaffing. Not only does this shortfall impact basic functioning at BOP facilities, but it reduces the BOP's ability to provide programming because non-correctional staff (like teachers and psychologists) are asked to fill in as guards, leaving them without time to do their usual work. *See, e.g.*, Jory Heckman, *Bureau of Prisons Understaffing Leads to 'Unprecedented Exodus' of Employees, Union Warns*, Federal News Network, Sept. 30, 2022, https://federalnewsnetwork.com/hiring-retention/2022/09/bureau-of-prisons-understaffing-leads-to-unprecedented-exodus-of-employees-union-warns/; Glenn Thrush, *Short on Staff, Prisons Enlist Teachers and Case Managers as Guards*, N.Y. Times, May 1, 2023, https://www.nytimes.com/2023/05/01/us/politics/prison-guards-teachers-staff.html. Any custodial term would impede the goal of rehabilitation.

Fifth, the proposed sentence will best ensure that restitution is made in this case. *See* 18 U.S.C. § 3553(a)(7). Restitution is important here to make amends to the community via the utility companies for the harm caused. Mr. Greenwood is committed to paying such restitution. Any custodial sentence would certainly disrupt his ability to

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 14

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

do so. He would have minimal ability to earn wages while in custody and a custodial term would certainly lose him his present job. Indeed, Mr. Greenwood has worked hard at his job, has been able to join the union, and has future promotion potential if he continues his great performance. He will best be able to make significant restitution payments if allowed to continue working.

Finally, imposition of the jointly recommended sentence here will not result in unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Counsel is unaware of any other case that is quite like this one. Certainly the offense is very serious. However, its impetus was desperation, not malice or terrorism. Furthermore, Mr. Greenwood's personal history was more challenging than that of the vast majority of people who come before this court. And his mental health struggles and SUD resulting from that history directly contributed to his actions here. This significant mitigation separates Mr. Greenwood from the average defendant anticipated by the guidelines.[2]

And Mr. Greenwood's extraordinary rehabilitation and transformation over the past year also distinguish him from most people who come before this Court, including his co-defendant in this case. Mr. Greenwood's achievements are impressive for anyone trying to achieve sobriety following significant methamphetamine use, but are especially incredible when considering the length of his SUD, his lack of any prior treatment, and his traumatic childhood. Mr. Greenwood's success on pretrial release demonstrates his positive character and his immense potential in the future. These characteristics also set his case apart from most that come before this Court.

This Court sentenced the co-defendant in this case to 18 months of custody, which was the sentence recommended by Probation in that case. However, both Probation and the government have recognized that Mr. Greenwood is ***not*** similarly

---

[2] Mr. Greenwood has no objection to the guidelines as calculated by Probation. However, as all parties recognize, the guidelines do not and cannot account for the unique combination of circumstances present in this case.

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 15

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

situated. The recommended sentence here, while different than the sentence imposed for the co-defendant, is not unwarranted. It is supported by the uncommon and significant mitigation present here. Probation and the government have correctly weighed the § 3553(a) factors and recommend that the Court should impose a sentence of Supervised Release, to include home detention, and restitution. Mr. Greenwood agrees and asks the Court to impose the jointly recommended sentence.

### VI.   CONCLUSION

Mr. Greenwood is truly sorry for his actions here. He will spend the rest of his life atoning for his terrible decision. He hopes to make amends in any way he can, including by paying restitution, and he is prepared to work hard to do so. Mr. Greenwood received appropriate treatment for his mental health and SUD for the first time in his life following his arrest in this case. He has demonstrated the type of person he is and the type of person he will be going forward—a devoted father, tireless worker, and strong advocate for sobriety and support for people in need.

DATED this 12th day of January, 2024.

Respectfully submitted,

s/ *Rebecca Fish*
Assistant Federal Public Defender
Attorney for Matthew Greenwood

MR. GREENWOOD'S SENTENCING MEMORANDUM
(*United States v. Greenwood*, CR23-5097-DGE) - 16

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710